[Sac. No. 439.   Department One.—April 8, 1898.]

In the Matter of the Guardianship of JOHN H. BANE and EDNA L. BANE, Minors.

GUARDIAN AND WARD—INVESTMENT BY GUARDIAN IN INDIVIDUAL NAME—ACCOUNTING.—Where a guardian invests the funds of his wards in a note and mortgage taken in his individual name, he will be held liable for any resulting loss upon rendering an account of his guardianship, without regard to any question of good faith or honest intention on his part.

ID.—LIABILITY OF TRUSTEE—CONSTRUCTION OF CODE.—The provision of section 2236 of the Civil Code, that "a trustee who willfully and un-

necessarily mingles the trust property with his own, so as to constitute himself in appearance its absolute owner, is liable for its safety at all events," is broad enough to include land as well as moneys: which are the property of the trust, and applies to a case where the trustee takes the title to trust land in his own name, or invests trust. moneys in a note and mortgage thus taken, so as to constitute himself in appearance its absolute owner.

APPEAL from an order of the Superior Court of Merced County settling the account of a guardian. J. K. Law, Judge.

The facts are stated in the opinion.

James F. Peck, for Appellants.

The guardian is liable for loss resulting from mingling the trust property with his own. (Civ. Code, sec. 2236; *In re Arguello*, 97 Cal. 196; *De Jarnette v. De Jarnette*, 41 Ala. 708; *Pennell v. Deffield*, 23 Eng. L. & Eq. 460; 11 Am. & Eng. Ency. of Law, 836; *Morris v. Wallace*, 3 Pa. St. 319; 45 Am. Dec. 642; *Williams v. Williams*, 55 Wis. 300; 42 Am. Rep. 708; *Jenkins v. Walter*, 8 Gill & J. 218; 29 Am. Dec. 539.)

V. G. Frost, for Respondent.

The guardian was not guilty of negligence or bad faith and should not be held responsible for loss. (*Estate of Cousins*, 111 Cal. 441; *Wheeler v. Bolton*, 92 Cal. 159.)

C. H. Marks, for Sureties on Guardian's Bond.

CHIPMAN, C.—Jacob Gardner, Jr., was duly appointed guardian of the estates of John H. and Edna L. Bane, minors, in March, 1892. There came into his hands as such guardian $2,-722.48. Upon the 18th of March, 1897, he was ordered by the court to render an account of his guardianship, which order was complied with. John H. Bane, having come of age, filed objections to certain items of the account. Upon the hearing the court approved and settled the account as rendered, except as to an item of $25, which was reduced to $20. No finding of fact or conclusions of law were filed or signed by the court, nor were findings waived.

The appeal is from the judgment or order settling the account and is presented by bill of exceptions. It appears that on May

14, 1892, the guardian loaned to Laura Blackwell, who was the mother of the minor children, the sum of $500, taking her promissory note at eight per cent interest, secured by mortgage on eighty acres of land in Merced county; and on November 15, 1892, he loaned to M. J. Blackwell, husband of Laura Blackwell, $1,600 at ten per cent interest, secured by mortgage on three hundred and twenty acres of land in Fresno county. The notes were payable three years after date, and the mortgage provided that if there was default in the payment of interest the mortgagee had the option to deem the notes due and foreclose at once. The notes and mortgages were taken in the individual name of Jacob Gardner, Jr., as payee and mortgagee, and no part of principal or interest has been paid.

It is in evidence that the guardian consulted his bondsmen about making the loans, and one of them advised it; that the loans were made for the benefit of the wards, and there was no intention on the part of the guardian to profit himself in any way by the loans; that the lands mortgaged to secure the $1,600 note were at the time worth $1,920, and were situated near lands owned by the bondsman who advised the loan and was familiar with land values at that place; that by reason of depreciation in values, caused by "the prevailing depression and hard times," the three hundred and twenty acre tract had fallen in value to $800; that the guardian began foreclosure proceedings on this note early in 1897, and as reason for not doing so sooner he testified: "I did not foreclose the mortgage after the land declined to its present value [which was in 1894] because I believed the financial depression pervading the county would cease, times grow better, and the land in consequence increase in value. In this I have been disappointed." As to the eighty-acre tract the evidence is that it is still of the value of $800 and was a good and ample security at the time the account was filed. It is in evidence that M. J. Blackwell has removed to the state of Nevada, and that, so far as the guardian knows, neither of the mortgagors has any property except the mortgaged premises, but there is no evidence of the insolvency of either of them beyond the fact just stated.

1. Appellant claims that the fact alone that the guardian took

the notes and mortgages in his individual name precludes the court from treating the loans as made for the wards, and that the transaction must be treated as shown upon its face, and the sum thus invested cannot be credited on the guardian's account; that the notes and mortgages having been taken in the individual name of Gardner, he thereby mingled the trust funds with his own and may be charged with a *devastavit* at the election of the *cestui que trust*.   Citing numerous cases and also section 2236 of the Civil Code, which provides: "A trustee who willfully and unnecessarily mingles the trust property with his own, so as to constitute himself in appearance its absolute owner, is liable for its safety in all events." (Citing, also, *In re Arguello*, 97 Cal. 196.) It was distinctly held in *In re Arguello, supra,* that an administrator who deposits funds of the estate in a bank in his own name, without any designation or indication of his representative capacity, is personally liable for the loss of the deposit resulting from a failure of the bank.   The good faith or intention of the administrator in making the deposit in his own name, and the fact that he had no other account in the bank, and that the bank at the time was of good credit, were held to be in no way involved in the question of his liability.   It is claimed by respondent that "the doctrine laid down in the Arguello case is overruled by this court in the case of *Estate of Cousins,* 111 Cal. 441, in so far as it may apply to the facts of this case."   In the Arguello case and *Estate of Cousins, supra,* and the case now before us, the good faith and honest purpose of the trustee were not questioned, nor is the fact disputed that the trustee intended that the *cestuis que trust* should have the benefit of the transaction and that it was made for their benefit.   In each case the trustee made the investment in his individual name without in any way indicating that the *cestuis que trust* had any interest whatever in the investment.

In the *Estate of Cousins, supra,* the guardian conceded his liability for the amount lost in taking the note and mortgage, but contested only the item of interest on that amount, and all that this court decided in that case was that he was not liable for interest.   In discussing the principle involved the court made no

reference to the Arguello case, and we think did not intend to overrule the principle upon which that case rests.  A careful review of the cases fails to show any difference in principle where the trustee deposits money to his individual credit and where he invests by note and mortgage in his individual name.

It is stated in a note in Hare & Wallace's Leading Cases in Equity, volume 3, third American edition, top page 475, that "all the cases seem to agree, and there can be no doubt on principle, that a trustee or executor who makes an investment or deposits money in his own name, without designating or describing it in some way as the property of the trust, will be responsible for any loss which may occur subsequently, because he would be otherwise able to play fast and loose with his *cestuis que trust*, and throw the hazards of his own business on them, by designating the fund in which the loss has fallen as theirs, whether it was or was not so in reality."

It was said in *Naltner v. Dolan,* 108 Ind. 500, 58 Am. Rep. 61: "The authorities agree that a trustee who either invests or deposits trust money in his own name, without in some way designating it as trust property, will be responsible for any loss that may occur to the fund which is so invested."

It has been held to be a mingling of a trust with private funds where a trustee acts in his own name and private capacity when taking real estate security for the loan of trust money.  Such conduct is held to be highly reprehensible and as not only unjust to the *cestuis que trust,* but as detrimental to the public weal; and it has received most emphatic denunciations both in the English and American courts.

We think the provisions of our Civil Code, *supra,* must be held to apply to such a case as the one before us.  The words "trust property" are broad enough to include land as well as moneys.  To willfully and unnecessarily take the title to real property belonging to the trust in the individual name of the trustee, or to thus take a note with a mortgage as security for money belonging to the trust, "so as to constitute himself in appearance its absolute owner," would in our opinion amount in law to mingling the trust property with his own, and the trustee would become "liable for its safety in all events."

There is no pretense here that the guardian was under any necessity to take the note and mortgage in his individual capacity; there is no evidence that he ever reported the loan to the court or asked its approval, and he filed no account of his administration until upon the order of the court he made the one now presented. We think that under well-settled principles governing the relations of trustees and their beneficiaries it was error to approve and allow these two contested items.

This view of the matter makes it unnecessary to consider the remaining points presented by appellant. It is recommended that the order settling the guardian's account be reversed and the cause remanded for further proceedings.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the order settling the guardian's account is reversed and the cause remanded for further proceedings.

Harrison, J., Garoutte, J., Van Fleet, J.