(No. 22713.—

PAULINA GITS, Appellant, *vs.* ALFRED K. FOREMAN, Receiver, Appellee.

*Opinion filed April 12, 1935—Rehearing denied June 6, 1935.*

ORR and FARTHING, JJ., dissenting.

DANIEL M. DEVER, and JAMES T. MOORE, (DANIEL V. GALLERY, of counsel,) for appellant.

SCHUYLER, WEINFELD & HENNESSY, (THEODORE E. ZAHLER, and LAWRENCE NELSON, JR., of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on appeal from and on certificate of importance of the Appellate Court for the First District for review of a judgment of that court reversing a decree of the circuit court of Cook county. Valentine Gits, guardian of the estate of Paulina Gits, then a minor, filed her intervening petition in the proceeding to liquidate the Chicago Bank of Commerce, praying that a certain deposit made by her of her ward's funds in the sum of $4048.32 be declared a preferred claim on the assets of the bank.

The original deposit was made by Valentine Gits in the Union Bank of Chicago on February 17, 1930, in the sum of $6370.71. It was made in the name of the estate of Paulina Gits, a minor, by Valentine Gits, guardian. An ordinary pass-book was issued by the bank, on which it was noted that the funds had been deposited subject to the control of the guardian, Valentine Gits, and the Fidelity Casualty Company of New York, surety for the guardian. Withdrawals were made from time to time by checks signed by the guardian and countersigned by the surety company.

These withdrawals were sometimes on order of the probate court and sometimes without such order. The deposit was made without an order of the probate court. On October 13, 1931, the Chicago Bank of Commerce assumed the deposit liability of the Union Bank of Chicago and this account was transferred to the former bank, which issued a like pass-book. On June 24, 1932, the Chicago Bank of Commerce was closed and appellee, Foreman, was appointed receiver. On the day prior to the closing of that bank a check for $200 was drawn against the account and returned unpaid. The balance, with this check, constitutes the sum above stated and is the fund claimed by appellant to be a trust fund.

A hearing on the petition was had before a master in chancery, who recommended a decree holding the bank to be trustee for the benefit of the minor under the provisions of an act entitled, "An act to provide for and regulate the administration of trusts by trust companies." (Cahill's Stat. 1933, chap. 32, par. 345.) This finding was approved by the chancellor, and a decree was entered finding the deposit to be a trust fund and directing the receiver to pay the same *pro rata* with all other preferred claims in due course of administration. The Third Division of the Appellate Court for the First District reversed the decree of the trial court, at the same time entering an order directing that the cause proceed in the name of Paulina Gits, as she had reached majority. It is stipulated that both the Union Bank of Chicago and the Chicago Bank of Commerce had complied with the act for the regulation of a trust by trust companies, commonly known as the Trust Company act.

The appellant here, Paulina Gits, contends, first, the deposit was by a contract made by her guardian in her name, and that she is not bound thereby but may disaffirm and repudiate it; second, the contract was void on the ground of public policy because the guardian agreed to give the

bonding company veto power over the orders of the probate court for certain withdrawals; third, the deposit was a loan to the bank, made contrary to the Guardian and Ward act; and fourth, the banks were authorized to do business under the Trust Company act and accepted the deposit as one made under that act, and the receiver is therefore estopped to claim that because no formal order was entered directing that the deposit be so made, that deposit is not protected by securities in the hands of the State Auditor, as required by the Trust Company act. Appellee, on the other hand, contends that a guardian may, awaiting an investment, deposit the funds of his ward in a bank of good reputation; that he may bind the estate of his ward by a contract reasonable in its terms and reasonably necessary to the preservation and management of the estate, and may make a deposit such as here made without an order of the probate court. It is also argued that the deposit is presumed to be a general deposit, and that no attempt was made to conform to the Trust Company act, and therefore the deposit does not come under that act.

We will consider first the point upon which the decree of the circuit court appears to have been based—that is, that the Trust Company act is applicable to this deposit. Section 2 of that act makes it lawful for the probate court to appoint a bank complying with the Trust Company act as guardian of a minor's estate, and provides that on the application of any guardian or person interested in the estate administered by such guardian, and after notice to parties in interest and a hearing on the application, order the guardian to deposit moneys then in his hands, or which may come into his hands thereafter, until further order of the court, with any bank qualifying under the act. This section further provides: "And upon deposit of such money, and its receipt and acceptance by such corporation, the said officer or trustee shall be discharged from

further care or responsibility therefor. Such deposits shall be paid out only upon the orders of said court." This act also provides for a reduction of the bond of such guardian or other officer or trustee after the court orders such deposit.

As we have seen, there was here no order entered by the probate court directing the guardian to deposit the moneys with a trust company or discharging the guardian from further responsibility. So far as the record discloses, the deposit was made by the guardian on her own responsibility. By her consent the surety company, acting as surety for her as guardian, was given the right to countersign all checks drawn against the account. The bond of the guardian is still in existence, so far as this record shows. Cases cited on behalf of the appellant as supporting her contention that the deposit here was made under the Trust Company act are those where a guardian or administrator has deposited funds, pursuant to an order of the court, for the purpose of securing his discharge as such officer or administrator and relieving him from liability. There is no evidence that there was any attempt on the part of the guardian to avail herself of the provisions of the Trust Company act. The banks in which these deposits were made were engaged in a general banking business. Appellant's contention in this regard cannot be sustained as against the bank.

Appellant also argues that as this deposit was made in her name as a minor, by Valentine Gits, her guardian, the deposit was unwarranted and unlawful, and was therefore by a contract which the guardian had no right to make, and as the bank knew these facts and accepted the deposit it was bound to treat it as a trust fund. Distinction is sought to be drawn between the legal effect of a deposit made in the name of the guardian for his ward and one made in the name of the ward by the guardian. While some courts have drawn such a distinction, we are not impressed with the influence of one method over the other in a proceeding of this character. The manner in which

the deposit is made or is characterized does not change the character of the deposit. Whether made by a guardian as guardian of the estate of the minor or made in the name of the minor by the guardian is of no consequence in determining whether the deposit is a general or special one. The question between the depositor and the bank is not what relation the depositor or the fund bears to some third party, but rather whether a trust relation has been created between the bank and the depositor in connection with the fund. (*People* v. *Farmers State Bank,* 338 Ill. 134.) That the money belonged to the estate of the minor is not contested here, and if the bank had no right to receive such as a general deposit and the guardian no right to make the deposit, it matters little how that deposit may be characterized. The substance of the matter is the same.

This brings, then, the question whether a guardian who has on hand funds of his ward awaiting investment may temporarily deposit the same in a bank. Section 22 of the Guardian and Ward act (Smith's Stat. 1933, chap. 64, p. 1567,) specifies the character of investments which a guardian may make of his ward's funds. It makes it the duty of the guardian to put and keep his ward's money at interest upon security approved by the court, and where he wrongfully and negligently allows it to remain in his hands uninvested when it well might have been invested he is chargeable with interest. It is obvious that while awaiting an opportunity to make such an investment as would be approved by the court or accumulating the funds of the ward therefor the guardian is nevertheless charged with the care of the fund. This does not mean that he is required to keep them on his person, but he is required to use due diligence to see that the funds are properly safeguarded and available when proper investment may be made. At common law a guardian had power to sell and dispose of the property of his ward without an order of court although he was liable on his bond for an abuse of

that power. (1 Cooley's Blackstone, (2d Rev. ed. 1879,) book 2, p. 371.) Such a disposition of the ward's property was a valid transfer so far as a vendee with no notice of the guardian's fraud was concerned. (15 Am. & Eng. Ency. of Law, (2d ed.) 56.) It was held in *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626, that so far as our statutes prescribe the powers and duties of guardians those statutes supersede the common law; but it also was held in *Bond* v. *Lockwood,* 33 Ill. 212, and *Schmidt* v. *Shaver,* 196 id. 108, that the common law powers of guardians still exist where not inconsistent with the statute. In the latter of these cases, where the guardian sold a judgment of the ward, it was held that such a transaction not being within the terms of any statute was within the power of the guardian.

We are referred to no statute in this State prohibiting a guardian making a temporary deposit of his ward's funds in a bank while awaiting investment. We are not here considering or deciding the obligation of the guardian to his ward.

This is a claim against the funds of a defunct bank and necessarily against the rights of other creditors. There must be some obligation on the part of the bank, arising at the time these deposits were made, to treat them as a trust fund before the claimant may take preference over other creditors. There can, in the nature of the transaction, be no obligation on the bank to inquire whether a deposit made by a guardian is to be a temporary one or more or less permanent, though the question of diligence of the guardian in seeking investment of his ward's funds, or whether the deposit was, in fact, temporary, is one which is always open for consideration in the settlement of his accounts. Such a question, however, is not here.

Counsel for appellant have cited *Sperry* v. *Fanning,* 80 Ill. 371, and *Nichols* v. *Sargent,* 125 id. 309, in support of the contention that a guardian had no power to bind

the estate of his ward. The *Sperry case* arose under a contract signed by Sperry as guardian, and the court, while holding that in such a case the guardian binds himself personally rather than the estate of the minor, points out that the question as to what extent the guardian, under the sanction of the court, could bind the estate of his ward was not before the court. And so in *Nichols* v. *Sargent, supra,* which was a lease executed by Nichols as guardian, it was held that where a guardian so signs he is personally liable, in the absence of a clear showing which relieves such liability. No attempt was made in those cases to bind the estate of the ward, as the guardian was the only defendant before the court. In *Patek* v. *Patek,* 131 N. W. (Mich.) 1101, cited by appellant, Patek had $1000 in his possession belonging to his client. He placed it in a trunk at his residence. During his absence from home his wife found it and sent it to a bank, where it was deposited in a savings account in her name. The next day the bank was closed. It was there held that the wife's possession of the money was not by virtue of any such consent or relationship as could be construed as authorizing a deposit and that the title to the money never passed to the bank. That case is not authority here.

Counsel also say that this deposit was wrongful and unlawful because the guardian consented to a control over the withdrawal of the funds by the surety company, and cite in support of this contention *Estate of Woods,* 159 Cal. 466, 36 L. R. A. 232. They argue that the holding in that case is that the contract was void. The holding of the California court, as we understand it, was, that where a trustee enters into an arrangement with reference to a trust fund, by which he surrenders or limits his control over it, he becomes a guarantor of the fund and in event of the loss of the fund he is responsible therefor. Such was the holding in *Forsyth* v. *Woods,* 11 Wall. 484, 20 L. ed. 207. The court did not hold that such a deposit

is invalid so far as the bank is concerned, but points out that whether such an arrangement could or could not be enforced as between the guardian, the surety and the bank, the transaction was brought within the rule that made the guardian a guarantor of the fund by reason of such arrangement. There is here no question of the obligation of the guardian or her surety to return this fund to the appellant. The case is not authority for the position that the deposit is invalid so far as the bank is concerned.

Counsel for appellant next argue that a deposit in a bank is a loan to it, and since section 22 of the Guardian and Ward act prescribes the method by which loans or investments may be made and those conditions were not met in this case, the bank was bound to treat this fund as a trust fund. The distinction between a loan and a deposit has been before this court in at least two cases. In *McCormick* v. *Hopkins*, 287 Ill. 66, the suit was against a surety company to recover public funds deposited in a bank which later closed. The defense was that the money was deposited before the surety became bound on its bond. The deposit was represented by a certificate of deposit. The last certificate of deposit issued was subsequent to the execution of the bond. It was argued there that the deposit was a loan to the bank, and the loan having originally been made before the surety executed its bond and not having been actually paid, it did not come within the provisions of the bond. It became important there to point out the distinction between a loan and a deposit. This court there said: " 'Deposits are made in banks in accordance with universal and commercial usage which becomes a part of the law of the transaction. They are neither loans nor bailments in the strict sense of the term. A deposit is a transaction peculiar to the banking business and one that the courts should recognize and deal with according to commercial usage and understanding.' * * * An ordinary deposit in the usual course of business, while it creates the rela-

tion of debtor and creditor, is not a loan to the bank. (*Officer* v. *Officer*, 120 Iowa, 389; *Hunt* v. *Hopley*, id. 695.) The word 'deposit,' according to its commonly accepted and generally understood meaning among bankers and by the public, includes not only deposits payable on demand and subject to check but deposits not subject to check, for which certificates, whether interest-bearing or not, may be issued, payable on demand or on certain notice or at a fixed future time." So in *Emerson* v. *North American Transfer Co.* 303 Ill. 282, the distinction drawn in the *McCormick case* was approved. We are of the opinion that the deposit cannot be considered a loan, and therefore does not come within the provisions of section 22 of the Guardian and Ward act regarding security for loans or investments.

Counsel argue that a deposit such as this, made without a court order, is unlawful, and therefore must be treated as a deposit of a trust fund. They cite *Andrews* v. *Franklin*, 207 Iowa, 394, and other Iowa cases. A reading of the Iowa code of 1924 (sec. 12581) reveals that guardians are required to manage the affairs of their wards under proper orders of the court in charge thereof. It would seem that under this code a greater restriction is placed on guardians than in this State. Counsel also cite *State of Nebraska* v. *Bartley*, 39 Neb. 353, where a suit was brought to compel Bartley to make a deposit of State funds. It was there held that such a deposit as there contemplated came within the constitutional and statutory inhibitions against certain loans of school funds. Counsel also cite and quote at length from *Smith* v. *Fuller*, 86 Ohio St. 57, 99 N. E. 214, where an action was brought against the assignees of an insolvent bank by trustees of a savings bank to have general deposits made by the trustees declared trust funds. The Supreme Court of Ohio there held that under the laws of that State the trustees had no right to make such deposits and the funds should be held to be trust funds in the hands of the bank. Other

472

cases cited by counsel for appellant turn on the power of the trustee to make such deposits. This court considered this question in *People* v. *State Bank of Maywood,* 354 Ill. 519. The village of Maywood sought to have its claim to certain funds deposited by it in a defunct bank preferred over the claims of other creditors on the ground that the funds were trust funds. It appeared in that case that there was a valid ordinance of the village requiring a bank to execute an indemnity bond to qualify as a depository of village funds. It was held that the acceptance of deposits by the bank without complying with that ordinance created it a trustee *ex maleficio* and funds so deposited became trust funds. Receipt of the deposits without compliance with the ordinance was there held to be unlawful. It was also held that the deposit of other funds of the village not specified in the ordinance was a general deposit. That case is distinguishable from the case before us on that ground, and on the further ground that a duty was imposed on the bank to comply with this ordinance before accepting funds of the character designated therein. As we have seen, there is nothing in the statutes of this State prohibiting a temporary deposit by a guardian of his ward's funds in a bank awaiting investment, and the cases cited do not control under such a state of facts.

There is no presumption that a deposit by a guardian of his ward's funds is a special deposit or trust fund as distinguished from a general deposit. The presumption is that a deposit in a bank is a general deposit, in the absence of an agreement to the contrary. *People* v. *Home State Bank,* 338 Ill. 179; *Meadowcroft* v. *People,* 163 id. 56.

The judgment of the Appellate Court is right and is affirmed.

*Judgment affirmed.*

ORR and FARTHING, JJ., dissenting.