[L. A. No. 14716.   In Bank.—November 29, 1935.]

In the Matter of the Estate and Guardianship of ALEA K. OUNJUIAN (an Incompetent Person). FRANK T. HINES, Administrator of Veterans' Affairs, etc., et al., Appellants, v. THEODORE MILLER, Respondent.

H. C. Veit, J. C. Shunk and Carlos S. Hardy for Appellants.

Mills, Hunter & Dunn and C. R. Liljestrom for Respondent.

R. P. Wisecarver, Jesse H. Steinhart, John J. Goldberg, Thomas E. Davis, H. W. B. Smith, Hadsell, Sweet, Ingalls

& Lamb, Redman, Alexander & Bacon and Hartley F. Peart, as *Amici Curiae* on Behalf of Respondent.

LANGDON, J.—The respondent Miller was on January 15, 1930, appointed guardian of the estate of Alea K. Ounjuian, an incompetent person. In 1930 and 1931 he had in his possession money of the estate in the sum of $8,000, awaiting investment. This amount he deposited in the Bank of West Hollywood, in his name as guardian. The bank failed in June, 1931. Dividends were paid during liquidation, but on November 3, 1933, when respondent filed his final account, a balance of $5,227.38 was still owing. Respondent sought to be allowed a credit as to this sum. Objections were filed on behalf of the United States Veterans' Administration. The lower court allowed the credit, and this appeal followed.

There is no claim that the respondent acted illegally, fraudulently or negligently, and it is clear that the deposit was a temporary one for safekeeping, and not an investment of the funds of the estate. The only ground of appeal which requires consideration arises from the fact that the guardian, upon his appointment, entered into an agreement with the United States Fidelity and Guaranty Company, his surety, giving the latter joint control over the funds in the bank, so that the respondent could not draw any of the money on deposit without the counter-signature of a representative of the bonding company. In *Estate of Wood,* 159 Cal. 466 [114 Pac. 992, 36 L. R. A. (N. S.) 252], the court held that where a trustee or similar fiduciary enters into an arrangement which limits his control over trust moneys, he becomes a guarantor of the funds, and is responsible for their loss. The theory behind the decision is that any such arrangement hampers the guardian in the performance of his duty to safeguard the funds.

The court in *Estate of Wood, supra,* suggested that only the legislature could provide a method by which a surety company might have some control over the funds. (159 Cal. 473.) A few years later, in 1915, a statute was enacted to govern the deposit of money held by bonded fiduciaries. It provides: ''It shall be lawful for any party of whom a bond undertaking or other obligation is required to agree with his surety or sureties for the deposit of any or all moneys and assets for which such surety or sureties are or may be held

responsible, with a bank, savings bank, safe deposit, or trust company, authorized by law to do business as such, or other depositary approved by the court, or a judge thereof, if such deposit is otherwise proper, for the safe-keeping thereof, and in such a manner as to prevent the withdrawal of such money and assets or any part thereof, without the written consent of such surety or sureties, or an order of court, or a judge thereof, made on such notice to such surety or sureties as such court or judge may direct; provided, however, that such agreement shall not in any manner release from or change the liability of the principal or sureties as established by the terms of the said bond.'' (Stats. 1915, p. 1438; 3 Deering's Gen. Laws, 1931, Act 8317, p. 4690.) ·

There can be no doubt that the legislative purpose in the enactment of this statute was to overcome the effect of the decision in *Estate of Wood, supra*. By expressly authorizing the fiduciary to enter into agreements of joint control with a surety, the legislature has indicated that the arrangement is perfectly proper, and that the guardian who makes it is free from fault. Consequently he cannot be held accountable for the loss of estate funds merely by reason of such a lawful agreement, but only upon a showing of some other culpable conduct.

The agreement in the instant case provided for joint control, and removal of funds only upon written consent of the surety, but did not specifically provide that the money might be withdrawn by order of court or a judge. It is urged that by failure to include this provision the benefits of the statute are lost. We are unable to perceive the force of this argument. There is no rule of law which declares that an agreement made under authority of a statute must follow the express language of the statute. It is elementary that the general law enters into and becomes a part of the contract. Hence, although the agreement herein merely provides for withdrawal of the funds upon written consent of the surety, the guardian may still, under the general law which governs his duties, withdraw funds upon an order of the court or judge. All the protection specified by the statute of 1915 is therefore found in the present arrangement and there is no reason why that statute should not apply.

It should be observed that the question whether estate funds are best protected by unhampered control of a trustee, or by

joint control of a trustee and surety, is one of policy, and the legislature has made it clear that there is nothing objectionable in the method employed herein.

The judgment is affirmed.

Shenk, J., Curtis, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.