[L. A. No. 19295. In Bank. June 26, 1946.]

LOCKHEED AIRCRAFT CORPORATION (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

H. C. Tallmadge, Roger B. Smith, Chase, Barnes & Chase, Stanley N. Barnes, Donn B. Downen, Jr., O'Melveny & Meyers and Jackson W. Chance for Petitioner.

J. H. O'Connor, County Counsel, Douglas De Coster, Deputy County Counsel, and Katz, Gallagher & Margolis for Respondents.

GIBSON, C. J.—The Lockheed Aircraft Corporation, hereinafter called defendant, was sued by eighteen of its former employees, hereinafter referred to as plaintiffs, claiming they had been wrongfully discharged pursuant to rules adopted and enforced by defendant regulating and controlling their political activities in violation of section 1101 of the Labor Code.

Defendant's demurrer to the complaint having been overruled, it answered denying the existence of the rules and regulations above referred to and alleged by way of affirmative defense that it was engaged in the manufacture of airplanes for the federal government under contracts which required it to protect its plants from entry by persons of unknown loyalty or suspected disloyalty to the United States, and that it did not have sufficient information and belief as to the respective plaintiffs to satisfy itself of their unquestioned patriotism and loyalty.

Defendant here seeks to prevent further proceedings in connection with the taking of the deposition of its president, contending that section 1101 of the Labor Code, which underlies plaintiffs' action, is unconstitutional and that therefore respondent court is without jurisdiction of the subject matter.

In *Rescue Army* v. *Municipal Court, ante,* p. 460 [171 P.2d 8], we held that if the statute under which a defendant is charged with crime is unconstitutional a court purporting to act thereunder will be restrained by prohibition in a proper case. Insofar as the jurisdictional question is concerned, there is no difference between the case of a criminal prosecution for a purported offense which does not exist because of the invalidity of the statute creating it and the case of a civil suit in which the cause of action was created by a void statute.

Plaintiffs have not disputed defendant's contention that the cause of action is based entirely upon the statute, nor have they objected to the propriety of this application for prohibition on the ground that some other adequate remedy is available. And the District Court of Appeal, in its opinion, prior to our granting of a hearing, passed on the merits of the several challenges to the constitutionality of section 1101. Thus, the court below has assumed that prohibition was a proper remedy to raise the constitutional issues, and the parties now join in urging us to pass upon those issues. The proceedings in the respondent court were interrupted many months ago and to avoid further delay we make the same

assumption, solely for the purpose of this opinion, for we are satisfied that under all the circumstances a present disposition of the constitutional questions will serve to expedite, rather than disturb, the orderly processes of justice. (See *Rescue Army* v. *Municipal Court, ante,* p. 460 [171 P.2d 8].) We therefore proceed to a consideration of the arguments advanced against the constitutionality of section 1101 of the Labor Code.

The section reads as follows: ''No employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office. (b) Controlling or directing or tending to control or direct the political activities or affiliations of employees.''

The first contention made by defendant is that section 1101 is so uncertain and ambiguous that it is unconstitutional. ■ All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. ■ Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. (*Collins* v. *Riley,* 24 Cal.2d 912, 915 [152 P.2d 169]; *People* v. *Superior Court,* 10 Cal.2d 288, 298 [73 P.2d 1221]; See, also, *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 636 [91 P.2d 577], and cases cited.) ■ A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. As stated in *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668, at page 676 [8 P.2d 140, 80 A.L.R. 1217], ''Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its construction will not justify us in disregarding it.''

■ Defendant asserts that it cannot determine whether subdivision (b) of the section, which prevents an employer from controlling or directing the political activities or affiliations of employees, prohibits an employer from discharging persons who advocate the overthrow of the government by force or violence, or whose loyalty to the United States has not been established to the satisfaction of the employer.

The Merriam Webster Dictionary, second edition, defines ''political'' as ''Of or pertaining to the exercise of the rights

and privileges or the influence by which the individuals of a state seek to determine or control its public policy; having to do with the organization or action of individuals, parties, or interests that seek to control the appointment or action of those who manage the affairs of state." The same authority defines "politics" as "The science and art of government; the science dealing with the organization, regulation, and administration of a state, in both its internal and external affairs; political science. . . . The theory or practice of managing or directing the affairs of public policy or of political parties; hence, political affairs, principles, convictions, opinions, sympathies, or the like. . . ."

Whether the statute is read alone, or in conjunction with the quoted definitions, there is no intimation or implication of any intent to protect any individual or group advocating the overthrow of the government by force or violence. On the contrary, the words "politics" and "political" imply orderly conduct of government, not revolution. Likewise, there is no intent to protect the members of any organization as such, regardless of the varying shades of political beliefs which may be asserted or alleged to be espoused by the group. In each case, the interference proscribed by the statute is interference with "political activities or affiliations," and the test is not membership in or activities connected with any particular group or organization, but whether those activities are related to or connected with the orderly conduct of government and the peaceful organization, regulation and administration of the government. We find nothing in the section which is intended to prevent an employer engaged in producing vital war materials from discharging an employee who advocates the overthrow of our government by force or whose loyalty to the United States has not been established to the satisfaction of the employer.

The statute is also said to be uncertain because it "does not designate whether the prohibited rule, regulation or policy be a published rule, regulation or policy or an unpublished one." The matter of publication is a false issue. The statute provides that "No employer shall make, adopt, or enforce any rule, regulation or policy," hence evidence of publication or lack of publication is material only insofar as it may tend to prove or disprove the existence of any such rule or policy. The word "policy" is defined as "A settled or definite course or method adopted and followed by a govern-

ment, institution, body, or individual.'' (Merriam Webster Dictionary (2d. ed.))

Defendant next contends that section 1101 constitutes an unjustifiable and arbitrary limitation on the liberty of contract in violation of both the state and federal Constitutions. The right to contract is not absolute and unqualified, and reasonable restrictions are not prohibited by the constitutional provisions. Unless it is shown that the restraint here involved is unreasonable or unjustifiable, it must be presumed that the Legislature determined that the measure was necessary for the general welfare of the people and for the protection of rights connected with the use of the ballot. The wisdom of the policy underlying the statute is a matter solely for the Legislature, and where it is determined that a restriction or regulation is necessary to protect a fundamental right and the statute is reasonably designed to achieve that purpose, the courts will not interfere. The right to ballot would be endangered if citizens were deprived of any incidents of that right or if they were hampered in their advocacy of or opposition to measures which may be placed upon the ballot. We cannot say that section 1101 is not properly designed to achieve the result intended by the Legislature or that there is an arbitrary or unreasonable limitation of the right to contract.

A violation of section 1101 is made a misdemeanor by section 1103, and defendant contends the statute is therefore penal in character and does not create any civil right of action. This argument ignores section 1105 which provides that ''Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter.'' The contract of employment must be held to have been made in the light of, and to have incorporated, the provisions of existing law. (*Stockton Sav. & Loan Bank* v. *Massanet*, 18 Cal.2d 200, 206 [114 P.2d 593]; *Guardianship of Ounjuian*, 4 Cal.2d 659, 661 [52 P.2d 220]; *Mott* v. *Cline*, 200 Cal. 434, 446 [253 P. 718].) Hence, upon violation of the section, an employee has a right of action for damages for breach of his employment contract.

Defendant also contends that section 1101 is unconstitutional because its enforcement assertedly deprives an employer of the right of free speech and prevents him from publishing his political beliefs or views among his employees. There is nothing in the section which, expressly or by implication, has any such effect.

The facts and issues have not been sufficiently established or clarified to justify a present consideration of such matters as the possible effect of sections 2920-2928 of the Labor Code, or of various federal statutes governing the performance of contracts with the federal government relating to war materials. We do not deem it proper to consider those matters in this proceeding when the cause of discharge has not yet been established.

Defendant also seeks to restrain respondent court from enforcing compliance with a subpoena duces tecum issued on the taking of the deposition, asserting that the affidavit in support thereof is defective in that it does not sufficiently describe and identify the desired records. It is well established that prohibition cannot be used to prevent the enforcement of a subpoena duces tecum on the ground the affidavit is defective. (*C. S. Smith Met. M. Co.* v. *Superior Court,* 16 Cal.2d 226 [105 P.2d 587].) If the questions relating to the sufficiency of the affidavit are not properly disposed of by objections in the trial court, and contempt proceedings ensue, the remedies of certiorari and habeas corpus are considered adequate. (*State Bd. of Equalization* v. *Superior Court,* 20 Cal.2d 467, 471 [127 P.2d 4] ; *Wessels* v. *Superior Court,* 200 Cal. 403 [253 P. 135] ; *Commercial Bk.* v. *Superior Court,* 192 Cal. 395, 397 [220 P. 422].)

The alternative writ is discharged, and the application for a peremptory writ is denied.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied July 24, 1946. Carter J., voted for a rehearing.