[No. F007836. Fifth Dist. Dec. 29, 1987.]

BRAD WILSON et al., Plaintiffs and Respondents, v.
GEORGE E. COOK, as Superintendent, etc., et al., Defendants and
Appellants.

346

## COUNSEL

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Walter E. Wunderlich and Denis D. Smaage, Deputy Attorneys General, for Defendants and Appellants.

Fullerton, Lang, Richert & Patch and Douglas E. Noll for Plaintiffs and Respondents.

<hr>

OPINION

FRANSON, P. J.—

STATEMENT OF THE CASE AND FACTS

Each year since 1981 the State Department of Parks and Recreation (the Department) solicits bids from persons interested in obtaining a concession for specified commercial activities within the Millerton Lake State Recreation Area (the lake) north of Fresno. The concessionaire pays the state a percentage of all receipts from the business. One such concession covers the rental and sale of sailboards, sailboard instruction, and the storing of sailboards and equipment at the lake.

Respondents Brad Wilson and Tom Frost have been in the sailboard business under the name of Hot Bottoms Ski and Sports in Fresno since about 1981. As part of their business, respondents teach sailboarding at the lake. The lessons are arranged for and prepaid at their Fresno store. Respondents also sponsor midweek evening barbecues at the lake where qualified persons can use respondents' sailboards at no charge. Attendance at the barbecues is promoted by newspaper advertisements which read:

"*Windsurfing*

"Tuesdays—Windsurfing and beach barbecue at Millerton Lake, 4 p.m. Demo windsurfers available for certified sailors from Hot Bottoms. Call for reservations. School boards also available for graduates of any sailing school. No charge. Details: 432-2228 or 822-2750."

In past years respondents have been allowed to give sailboard lessons and demonstrate their sailboards at the lake without a written permit provided they did not solicit the lessons at the lake or collect money at the lake for their activities.

In March 1986, the Department solicited bids for the sailboard concession. Respondents were notified of the bidding, but decided not to participate because they believed they would be allowed to continue their activities at the lake without a permit. The sailboard concession was awarded to Huebner Sports of Fresno, which had held the concession the previous year.

Under the concession, Huebner Sports pays the state a percentage of all receipts for sailboard rentals and lessons, including rentals paid at its Fresno store.

After awarding the concession to Huebner Sports, George Cook, the newly appointed park superintendent, notified respondents they no longer would be permitted to give sailboard lessons or provide demonstration barbecues at the lake. He cited as authority California Administrative Code, title 14, section 4331 (hereafter section 4331)[1] which prohibits the solicitation, sale, hawking or peddling of merchandise or services in the park area without a permit. Respondents' request for a special use permit was denied by Cook. Respondents' appeal to the Department's regional director was also denied by letter stating that respondents' activities were clearly "promotional/commercial" in nature and that Huebner Sports was able to provide the necessary sailboard service.

Respondents then filed a verified complaint in the superior court seeking declaratory relief as to the validity of section 4331 and an injunction restraining the state from enforcing the section against them.

The cause was argued on the basis of sworn declarations of respondents and Mr. Huebner. The trial court granted respondents a preliminary injunction finding that respondents' First Amendment rights to peaceably assemble, to teach and to disseminate information had been infringed upon; also that section 4331 was overbroad in limiting speech and association rights "in a public forum—which a state park is." The preliminary injunction restrained the superintendent and the Department from: "1. Prohibiting plaintiffs from teaching sailboard lessons at Millerton Lake as long as such lessons are preregistered and prepaid for outside of the boundaries of the State Recreation Area, and so long as no solicitation, selling, hawking, or peddling of goods or services occurs within the state park.

"2. Prohibiting plaintiffs from organizing, meeting, and conducting demonstration nights at Millerton Lake State Recreation Area so long as there is no overt advertising or solicitation for lessons or sailboards within the State Recreation Area.

"3. Enforcing California Administrative Code Title 14, Section 4331 against respondents except and unless plaintiffs are engaging in any type of

---

[1] Section 4331 reads: "No person shall solicit, sell, hawk, or peddle any goods, wares, merchandise, services, liquids, or edibles for human consumption or distribute circulars in any unit, except by permit granted by the Department."

The term "unit" means any named and classified unit under control of the Department, including the Millerton Lake State Recreation Area. (Cal. Admin. Code, tit. 14, § 4301, subd. (t).)

overt advertising or solicitation of business within the State Recreation Area boundaries."

Superintendent Cook and the Department have appealed the order granting the preliminary injunction.

### DISCUSSION

I. *The scope and applicability of section 4331.*

It appears from the language of the preliminary injunction that the trial court believed section 4331 prohibits only direct acts of selling or promoting the sale of goods or services within the Millerton Lake area. Thus, if respondents refrain from advertising or otherwise directly soliciting business at the lake, they do not need a permit. In our view, the trial court misconstrued the scope of the regulation insofar as respondents' weekly barbecues are concerned.    However, the trial court's interpretation of the regulation appears reasonable insofar as respondents' sailboard teaching.

Section 4331 was enacted by the Department pursuant to Public Resources Code section 5003 which authorizes the Department to establish rules and regulations not inconsistent with law for the administration of the property under its jurisdiction. Section 4331 essentially provides that without a permit no person *shall solicit* the sale of any goods or services in any state recreational area. Although the rule is tersely stated, it reasonably may be construed to prohibit oblique acts of soliciting business as well as direct acts of soliciting business. If this were not so, enterprising persons could evade the intent of the regulation by various schemes such as, in the present case, the giving of free barbecue demonstration nights at the lake to promote the taking of lessons and the sale and rental of boards at respondents' stores outside the park. This activity must be deemed commercial in nature regardless of the degree of pleasure derived by the participants, including the respondents. Pleasure and profit often go hand in hand.

An administrative agency is entitled to interpret its own regulations. (2 Cal.Jur.3d, Administrative Law, § 105, p. 324.) Unless a court finds the agency's interpretation constitutes an abuse of discretion, it must defer to the agency. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4].)    Thus, the trial court erred in overruling the Department's determination that respondents' promotional activities at the weekly barbecues constituted commercial activity at the lake within the intendment of section 4331.

Respondents' teaching of sailboarding at the lake is another matter. Section 4331 does not prohibit a person from *performing* services within the park area if the services are incidental to a contract entered into outside the park area. For example, a boat repair service or a trailer rental service headquartered outside the park would not need a permit to service boats at the lake or to rent trailers for use at the lake provided there was no solicitation of or advertising for customers at the lake.

The evidence supports the trial court's implied finding that respondents' teaching activities were incidental to prior arrangements made at respondents' retail stores outside the park. Respondents would give lessons either as part of a sale contract for a board made at their stores or pursuant to a prepaid fee arrangement made at their stores. In either event, the commercial and promotional aspects of the lessons reasonably may be deemed to have occurred outside the park area.[2]

Section 4331 should be compared with the federal regulations governing the conduct of commercial activities within national park areas. Title 36, section 5.3 of the Code of Federal Regulations prohibits anyone without a permit from "[e]*ngaging in* or soliciting *any business* in park areas." (Italics added.) The federal courts have interpreted this regulation as barring a boat operator located outside the park from launching rented boats and providing guides for fishing and sightseeing trips at a lake inside the park. (See, e.g., *United States* v. *Carter* (D.Ariz. 1972) 339 F.Supp. 1394.) More in point, title 36, section 261.10 of the Code of Federal Regulations prohibits "*conducting* any kind of business enterprise or performing any kind of *work*" on national forest lands without authorization. This regulation has been interpreted as precluding a canoe rental business located on private property from contacting potential customers in a national forest, hauling the canoes on forest service roads and launching the canoes from a forest service boat ramp. (*United States* v. *Richard* (8th Cir. 1980) 636 F.2d 236.)

We also note 2 Code of Colorado Regulations 405-100(b)(14), which, as quoted in *State, D.N.R., etc.* v. *Clark General Store* (Colo.App. 1983) 658 P.2d 1385, 1386, provides that it shall be unlawful " '*to use* parks and outdoor recreation land for *a commercial purpose* without first obtaining written permission from the Board [of parks and outdoor recreation].' "

---

[2]Similarly, respondents' rental of sailboards for use at the lake does not constitute commercial activity within the scope of the regulation provided the rental contract is made at respondents' stores and no promotional activity for the rental of boards occurs at the lake. Although the regulation does not purport to prohibit the renting of goods or services at the lake without a permit, it reasonably may be construed to do so if the advertising for and solicitation of rental contracts are made at the lake. This presumably explains why this activity along with teaching sailboarding is included in the Huebner concession.

(Italics added.) The Colorado appellate court found that the defendant's activities of towing and launching boats, rented to customers outside state park lands, at a marina within the park constituted a commercial activity. (*Id.* at p. 1388.)

Unlike the federal regulations or the Colorado state regulation, section 4331, as it now reads, does not prohibit the performance of services or other activities which are incidental to commercial contracts entered into outside the park area. Thus, the trial court properly found that under the precise conditions imposed by the injunction respondents could teach sailboarding at the lake without a permit.

II.   *The constitutional questions.*

█   The trial court found that respondents' activities at the lake were a protected form of expression under the First Amendment right to "peaceably assemble, to teach and to disseminate information." Because we uphold respondents' right to teach sailboarding as a matter of regulatory interpretation, we need only address the constitutionality of regulating the demonstration nights at the lake.

In *Konigsberg* v. *State Bar* (1961) 366 U.S. 36, 50 [6 L.Ed.2d 105, 116, 81 S.Ct. 997], the United States Supreme Court explains that general regulatory statutes, not intended to control the content of speech but incidentally limiting its exercise, are not regarded as the type of law with which the First and Fourteenth Amendments are concerned. (See also *United States* v. *O'Brien* (1968) 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673].)

Section 4331 serves a substantial government interest which is to maintain the natural character of state parks for the public's enjoyment by regulating commercial activity within the parks. This fundamental governmental interest is not related directly to the suppression of information; moreover, "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that [governmental] interest." (*United States* v. *O'Brien, supra,* 391 U.S. at p. 377 [20 L.Ed.2d at p. 680]; cf. *Central Hudson Gas & Elec.* v. *Public Serv. Com'n.* (1980) 447 U.S. 557, 566 [65 L.Ed.2d 341, 351, 100 S.Ct. 2343].) Thus, the application of section 4331 to respondents' conmercial activities at Millerton Lake does not infringe on respondents' First Amendment rights.

█   Respondents' argument that section 4331 is overbroad and vague to the point that the public does not have fair notice of what conduct is prohibited, is without merit.   █   All presumptions and intendments favor the validity of a statute (or regulation), and mere doubt as to its

meaning does not afford sufficient reason for declaring its invalidity. (*Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d. 481, 484 [171 P.2d 21, 166 A.L.R. 701].) "Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.] . . . [They] cannot be held void for uncertainty if any reasonable and practical construction can be given to [their] language. . . . 'Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. . . .'" (*Ibid.*)

■ Section 4331 is simple and straightforward—it prohibits nothing more than the solicitation and sale of goods and services within the park area without a permit. Any person of common intelligence should understand what this means. ■ "Solicit" is defined as "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; . . ." (Black's Law Dict. (4th ed. 1968) p. 1564.) ■ Thus, any overt act designed to promote the sale of goods or services within the park comes within the purview of the regulation.

The order granting the preliminary injunction is reversed insofar as it restrains the appellants from regulating respondents' barbecue and demonstration activities at the lake. The order is affirmed insofar as it prohibits appellants from interfering with respondents' teaching activities provided no solicitation or advertising of such lessons or the sale or rental of the boards occurs at the lake. Each side to bear its own costs on appeal.

Woolpert, J., and Martin, J., concurred.