Filed 7/31/13  Nava v. Safeway CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JUAN NAVA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SAFEWAY INC.,<br><br>Defendant and Respondent. | F063775<br><br>(Super. Ct. No. CV001882)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Whelan Law Group, Walter W. Whelan and Brian D. Whelan for Plaintiff and Appellant.

Littler Mendelson, Bren K. Thomas, Ryan L. Eddings and Elisabeth F. Tietjen for Defendant and Respondent.

Shelbi D. Day and Jennifer C. Pizer for Lambda Legal Defense and Education Fund as Amicus Curiae on behalf of Defendant and Respondent

-ooOoo-

Defendant Safeway, Inc. (Safeway), a large supermarket chain, frequently displayed thematic posters in its stores and distribution centers as a way of promoting a corporate policy of diversity. In June 2009, a new poster entitled "GAY/LESBIAN PRIDE MONTH" was displayed by Safeway in the employee break room of its distribution center in Merced, California, where plaintiff Juan Nava was employed. Plaintiff was offended by the poster and removed it. When his supervisors confronted him about removing the company poster, plaintiff explained that he disagreed with the poster's political message. It appeared to plaintiff that Safeway was taking sides in the statewide political debate over same-sex marriage, a matter on which plaintiff had strong convictions. One week after this conversation took place, Safeway terminated plaintiff's employment.

Plaintiff then commenced the present action against Safeway for wrongful termination in violation of Labor Code sections 1101 and 1102, which statutes prohibit an employer from attempting to coerce or influence its employees' political activities through threat of discharge. Safeway responded to the lawsuit by filing a demurrer and special motion to strike (or anti-SLAPP motion) pursuant to Code of Civil Procedure section 425.16.[1] In addressing the anti-SLAPP motion, the trial court found that (1) plaintiff's claims arose out of conduct protected by section 425.16 and (2) there was no factual support for the alleged violation of Labor Code sections 1101 and 1102. More specifically, the trial court concluded there was no evidence to support plaintiff's theory that Safeway fired him from his job to punish him for having a particular political viewpoint or affiliation (i.e., pro-Proposition 8) or to intimidate other employees in the workforce who might agree with plaintiff's stance. Instead, it appeared to the trial court that plaintiff was terminated solely because he removed and damaged Safeway's poster,

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

The term "SLAPP" is "an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2.

which conduct amounted to plaintiff trying to censor *Safeway's* freedom of expression. Accordingly, the trial court granted the anti-SLAPP motion and dismissed plaintiff's action. Plaintiff appeals, arguing he made a sufficient showing in the trial court to overcome the anti-SLAPP motion. Although a close call, we think plaintiff is correct. Because the evidence presented in connection with the anti-SLAPP motion was minimally adequate to establish that plaintiff could potentially prevail on his wrongful termination claim, the trial court erred in granting the motion. Therefore, we reverse the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Plaintiff's First Amended Complaint

We begin by briefly summarizing the facts as alleged in plaintiff's first amended complaint filed August 15, 2011, which is the operative pleading. At the time of the poster incident, plaintiff had been an employee of Safeway for approximately ten years and was working as a forklift driver for Safeway at its Merced distribution center. On Monday, June 1, 2009, at about 4:40 a.m., plaintiff walked into the break room of the distribution center and saw the poster celebrating "GAY/LESBIAN PRIDE MONTH." Plaintiff removed the poster "because he was offended by the political message being espoused by Safeway." Allegedly, plaintiff believed that Safeway was trying to influence employees and customers regarding the political debate in California over same-sex marriage. At that time, Proposition 8 had recently been passed by California voters in November 2008, and there continued to be controversy about the issue of same-sex marriage.[2]

---

[2] Proposition 8, also known as the California Marriage Protection Act, was passed by a majority of California voters in the November 2008 election. (Cal. Const., art. I, § 7.5; *Strauss v. Horton* (2009) 46 Cal.4th 364, 385.) It provides: "Only marriage between a man and a woman is valid or recognized in California." (Cal. Const., art. I, § 7.5.) At the time of the events set forth in plaintiff's complaint, this issue was still very much in the public limelight. For example, in the week prior to Safeway's display of the subject poster, the California Supreme Court issued

The poster announced that June 2009 was "GAY/LESBIAN PRIDE MONTH" and focused on the life of Harvey Milk, whose picture was displayed. Under the word "[C]ourage," the poster stated: "We honor Harvey Milk, an Icon of the gay rights movement. Harvey Milk, a camera shop owner and vocal advocate of civil rights, made history in 1977 by capturing a seat on the San Francisco Board of Supervisors. The first openly gay person to win an elected office in the U.S., he fought for gay rights and led the battle to defeat a state proposition that would have banned gays and lesbians from working in California public schools. Milk's political career ended tragically with his assassination, but his legacy of civil activism lives on."

Safeway discovered that plaintiff had removed the poster because his conduct was recorded on a surveillance video. On June 4, 2009, Sue Carol, a corporate human resources representative, confronted plaintiff about removing the poster. Another Safeway manager was also present to observe the conversation. When confronted, plaintiff explained that he took down the poster because he was "extremely bothered" by the political agenda Safeway was apparently promoting (i. e., same-sex marriage). The two managers who heard plaintiff's explanation allegedly reacted by expressing "disapproval of [p]laintiff's position." On June 10, 2009, Safeway terminated plaintiff's employment. According to plaintiff's allegations, he was terminated "because he objected to Safeway's policy of seeking to have its employees and customers support the gay/lesbian political agenda." Plaintiff further alleged that "Safeway took such action to influence and to coerce the remaining Safeway employees' beliefs and their political

_____

its decision that Proposition 8 did not violate the California constitution (*Strauss v. Horton*, *supra*, at pp. 364, 391 [decided May 26, 2009]), and a new lawsuit was filed in the United States District Court before Judge Vaughn R. Walker, challenging Proposition 8 on the ground that it violated the United States Constitution (*Perry v. Schwarzenegger* (N.D.Cal. 2010) 704 F.Supp.2d 921, 928 [complaint filed May 22, 2009]). On June 1, 2009, the same day that the poster was displayed by Safeway, President Obama proclaimed June 2009 as "Lesbian, Gay, Bisexual, and Transgender Pride Month."

4.

action relating to the gay/lesbian political agenda." Additionally, plaintiff alleged that two other employees (i.e., Rob Fuentes and Doug Davis) were disciplined for separate incidents of taking down the poster or turning it around. Mr. Fuentes and Mr. Davis were suspended for several days.

Based on these allegations, plaintiff claimed that Safeway violated Labor Code sections 1101 and 1102. The first amended complaint set forth causes of action against Safeway for (1) wrongful termination in violation of public policy, (2) violation of Labor Code sections 1101 and 1102, (3) wrongful termination in violation of the whistleblower protections set forth in Labor Code section 1102.5, (4) unfair business practices, and (5) intentional infliction of emotional distress. Each cause of action, however labeled, was premised on the alleged violation of Labor Code sections 1101 and 1102.

Safeway's Anti-SLAPP Motion and Demurrer

Safeway responded to plaintiff's lawsuit by filing an anti-SLAPP motion pursuant to section 425.16. Safeway argued in its motion that plaintiff's causes of action were all based on conduct protected under section 425.16, since Safeway's display of the "diversity poster" clearly arose from its own exercise of free speech protected under the California and federal Constitutions. Additionally Safeway argued that the message contained in the subject poster—that of promoting diversity and tolerance—was of public interest and fully consistent with the legislative policy goals set forth in California's Fair Employment and Housing Act (FEHA), codified at Government Code section 12900 et seq. Safeway also addressed the second step of the analysis under its anti-SLAPP motion, which is whether or not plaintiff established "a probability that [he] will prevail on the claim." (§ 425.16, subd. (b).) Safeway argued there was no support or substantiation for a cause of action premised on the referenced Labor Code provisions, since the poster did not involve a rule or policy with respect to political actions or affiliations and did not control, direct or coerce any political course of action whatsoever.

5.

Moreover, Safeway asserted that plaintiff was terminated solely because he "took down the Harvey Milk Poster and damaged it."**3**

In opposition to the motion, plaintiff submitted several declarations in an effort to show that his termination was because of his political stance or platform, which Safeway found to be politically incorrect. Plaintiff's own declaration stated: "I viewed Safeway's placement of the gay and lesbian pride poster in the employee break room as Safeway's expression of its position on the debate concerning [P]roposition 8 and Safeway's declaration to its employees of its views and a mandate to employees to conform with those views. [¶] … I was offended by the political message of the gay and lesbian pride poster in the break room and I did not agree with it. I was not alone in this feeling. Other employees felt similarly…. Because I refused to agree with Safeway's political policy and message, I removed the poster and placed it outside of the break room in the adjacent wash room. Consequently, I was terminated. [¶] … When I was confronted about the poster, I expressed that I did not agree with the political message, that I was not alone, and that I did not wish to have the poster back in the break room. I believe that my termination was Safeway's attempt to make an example of me to others that might express similar and contrary political views to Safeway's political view."

Former Safeway employee Doug Davis submitted a declaration stating that he too was "offended by the political message" of the poster, which he understood to be that "the company [was] making a statement and pushing a gay [political] agenda." Mr. Davis turned the poster around on one occasion and he put it behind the vending machine in the break room on another occasion. He told a supervisor, Gardner Bullard, who he understood to be one of the persons in charge of placing such posters in the break

---

**3** This assertion was made in the declaration of Chris Nenoff, who was Safeway's Human Resource Manager of its Diversity and Inclusion Department. We note Mr. Nenoff's declaration stated that this was merely his understanding of why plaintiff was terminated.

room, that he disagreed with its placement. Mr. Bullard told him that he (Bullard) disagreed with the poster's message also. For his conduct, Mr. Davis was suspended for approximately one week. Safeway employee Rob Fuentes stated in his declaration that he was "very offended" by the political message of the poster. He was confronted by Mr. Bullard. He admitted to taking down the poster and turning it around because he didn't agree with its message. He also declared that he told management that if they put the poster up again he would "do that again to the poster." Mr. Fuentes was suspended for three days for taking the poster down and for turning it around on the easel.

Plaintiff's opposition evidence also included the declaration of another coemployee, Michael Homick, who stated as follows: "In 2009 a gay pride poster was displayed on an easel in the break-room in the Safeway distribution center in Merced. Over the course of a couple of days the poster was either taken down or placed in such a way that it could not be seen. When this happened, I would place the poster back in its place on the easel. One day, I found the poster crumpled in the wash room. I brought the poster and an accompanying note that I wrote to management. I told management that I did not want anyone to lose their job, but I wanted the matter looked into. [¶] … Later, it came to my attention that [plaintiff] was terminated for his involvement with the poster. I approached Sue Carol and told Ms. Carol that I did not believe that [plaintiff] should be terminated under the circumstances. [¶] … I am a gay man, and I have had occasion to interact with [plaintiff] in the work place over the years. [Plaintiff] has always been respectful to me and has never displayed any animosity or negativity to me because of my sexual orientation. I was surprised that [plaintiff] was terminated."

In addition to filing the anti-SLAPP motion, Safeway also demurred to the first amended complaint. The demurrer contended that plaintiff failed to state any cause of action premised on the alleged violation of Labor Code sections 1101 and 1102 because the poster was not political speech and, in any event, there was no influence, control or coercion by Safeway in regard to anyone's political action or affiliation.

Trial Court's Rulings

In its ruling on Safeway's anti-SLAPP motion, the trial court preliminarily observed the statewide political environment in which the underlying events took place: "The context in which this arose was that in November, 2008 California Electorate passed Proposition 8, the California Marriage Protection Act. Following enactment of the California Marriage Protection Act, litigation was filed attacking its constitutionality. In San Francisco, the issue received considerable attention in the news. The issue was a matter of public interest throughout the State. Safeway is based in the bay area. The litigation was pending in Federal Court before Judge [Walker]. The poster was put up during the time in which there was considerable public debate as to whether gays should be allowed to marry."

In its analysis of the motion, the trial court determined that the lawsuit arose out of protected activities under section 425.16. In the trial court's assessment, the lawsuit was based on the poster and the poster was Safeway's expression of its constitutional right of free speech on matters of public interest. (See § 425.16, subd. (e).) Thus, the trial court concluded the first prong of the anti-SLAPP motion was satisfied. Then, turning to the second prong of the motion, the trial court concluded that there was no supporting factual basis for plaintiff's claim that sections 1101 and 1102 of the Labor Code were violated by Safeway. The trial court found that plaintiff's termination was based on the removal of Safeway's poster. That conduct was an attempt by plaintiff to censor Safeway's free speech and was also insubordination on the part of plaintiff. Consequently, the trial court found the termination was clearly within the bounds of Safeway's rights as plaintiff's employer. (See Lab. Code, § 2922.)

As part of its ruling, the trial court indicated that it would not consider plaintiff's argument that Safeway actually fired him because of his opposing political stance on the gay rights political movement or Proposition 8. Apparently, the trial court was persuaded

8.

that for purposes of the anti-SLAPP motion, it could not consider Safeway's motive in terminating plaintiff's employment.

In a separate ruling, the trial court sustained the demurrer to the first, second, fourth and fifth causes of action of the first amended complaint *with* leave to amend. Only the demurrer to the third cause of action (for alleged violation of the whistleblower statute, Lab. Code, § 1102.5) was sustained without leave to amend.

After granting the anti-SLAPP motion, the trial court dismissed the entire action with prejudice. Plaintiff's timely appeal followed.

## DISCUSSION

### I. Standard of Review

We review de novo the trial court's ruling on an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) "Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits. [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock.com*).) In our de novo review, "'[w]e consider "the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based." (§ 425, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra,* at p. 326.)

### II. Overview of the Anti-SLAPP Statute

"[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.

[Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315.) "'[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts [in a meritless litigation] because you exercised your constitutional rights.' [Citations.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 193.) The resolution of an anti-SLAPP motion requires the court to engage in a two-step process: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.… [Second, i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).) However, "'[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

### III.     The Trial Court Improperly Granted the Anti-SLAPP Motion

#### A.     *First Prong*

Under the first step or prong of the analysis under section 425.16, the moving party must make a threshold showing that the challenged cause of action arose from protected activity within the meaning of the statute. (§ 425.16, subd. (b)(1); *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67; *Overstock.com*, *supra*, 151 Cal.App.4th at p. 699.) The activity protected by section 425.16 is described in subdivision (e) thereof, and includes "any … conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The trial court found the poster's message was an endorsement or promotion of gay rights and, as such, was an expression of Safeway's free speech on an issue of public interest or concern. (See *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486 (*Lockheed*) [nothing in Lab. Code,

10.

§ 1101 "deprives an employer of the right of free speech and prevents him from publishing his political beliefs or views among his employees"].) The trial court also concluded the lawsuit arose out of Safeway's display of the poster. Safeway agreed with the trial court on both of these points.

On appeal, plaintiff argues the issues were not sufficiently public in nature, since this was merely a private workplace dispute involving a few people. (See *Olaes v. Nationwide Mutual Ins. Co*. (2006) 135 Cal.App.4th 1501, 1511 [a workplace investigation of sexual harassment by a private employer and involving only a few individuals did not rise to level of a broad public interest under § 425.16, subd. (e)].) One flaw in plaintiff's argument is that his own pleading asserted the existence of significant statewide interest and concern relating to what he referred to as "the gay/lesbian political agenda," and to Proposition 8 in particular, which interest was allegedly reflected in "highly politicized debates" that were still "ongoing throughout the state." Plaintiff further alleged that he believed it was inappropriate for Safeway, by displaying the subject poster, to "take sides in the dispute." Thus, if we take plaintiff's allegations at face value, it would seem that he has virtually conceded the public nature of the speech entailed in this case.

Although we have briefly introduced the parties' positions, we decline to decide the issue of whether plaintiff's causes of action *arose out of* Safeway's protected exercise of free speech in connection with an issue of public concern. Due to uncertainty in the evidence whether plaintiff was terminated because of (1) his removal of Safeway's poster (on the one hand) *or* (2) the political viewpoint maintained by plaintiff (on the other hand), we find it simpler to resolve the anti-SLAPP motion by turning to the *second*

11.

prong of the motion. As will be seen, plaintiff met his burden of demonstrating a reasonable probability of prevailing on a cause of action.**4**

*B.     Second Prong*

In order to establish a probability of prevailing on a cause of action in the context of an anti-SLAPP motion, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' [Citation.]" (*Ibid*.) That is, the plaintiff must "'"'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor. [Citation.]'"'" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; however, the court does not *weigh* the credibility or comparative probative strength of competing evidence. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"Precisely because the statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com*, *supra*, 151 Cal.App.4th at pp. 699-700.) The plaintiff need

---

**4**     It is not unprecedented for an appellate court to review an anti-SLAPP motion by skipping to the second prong of the analysis. (See, e.g., *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820; *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988-989.)

only show a "minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5), or a case of "'minimal merit'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 95, fn. 11). Thus, the standard is similar to that employed in determining summary judgment, directed verdict or nonsuit. (*Grewal v. Jammu*, *supra*, 191 Cal.App.4th at p. 990.) "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.]" (*Varian Medical Systems, Inc. v. Delfino*, *supra*, 35 Cal.4th at p. 192.)

We shall first consider whether plaintiff adequately stated or pled a viable claim for violation of Labor Code sections 1101 and 1102, since the alleged statutory violations are the foundation for all of plaintiff's claims. Our evaluation thereof will require a brief review of the intent and scope of said statutes. Assuming the pleading was sufficient to allege the statutory violations, we will then proceed to consider the evidence submitted by the parties in connection with the anti-SLAPP motion.

Labor Code Sections 1101 and 1102

In 1937, "the California Legislature, recognizing that employers could misuse their economic power to interfere with the political activities of their employees, enacted Labor Code sections 1101 and 1102 to protect the employees' rights." (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 486-487 (*Gay Law Students*).) Labor Code section 1101 provides: "No employer shall make, adopt, or enforce any rule, regulation, or policy: [¶] (a) Forbidding or preventing employees from engaging or participating in politics …. [or] (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Labor Code section 1102 provides: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." These sections are designed to protect "'the fundamental

13.

right of employees in general to engage in political activity without interference by employers.'" (*Gay Law Students*, *supra*, 24 Cal.3d at p. 487, citing *Fort v. Civil Service Commission* (1964) 61 Cal.2d 331, 335.)

What constitutes political activity under these provisions was described by the California Supreme Court in its *Gay Law Students* decision as follows: "These statutes cannot be narrowly confined to partisan activity.[5] As explained in *Mallard v. Boring* (1960) 182 Cal.App.2d 390, 395: 'The term "political activity" connotes the espousal of a candidate *or a cause*, and some degree of action to promote the acceptance thereof by other persons.' (Italics added.)" (*Gay Law Students*, *supra*, 24 Cal.3d at p. 487.) It was further observed that "[t]he [United States] Supreme Court has recognized the political character of activities such as participation in litigation [citation], the wearing of symbolic armbands [citation], and the association with others for the advancement of beliefs and ideas [citation]." (*Ibid*., fn. omitted.) "Measured by these standards," the Supreme Court determined in the *Gay Law Students* case that advocacy for homosexual rights, or identifying oneself with that cause, was a form of political activity. (*Id*. at p. 488.) Since the employer in that case allegedly had a practice of discriminating against persons who identified themselves as homosexuals, or defended homosexuality or affiliated with organizations promoting such cause, a violation of Labor Code sections 1101 and 1102 was adequately stated in the complaint, giving the plaintiffs a cause of action for damages against the employer. (*Gay Law Students*, *supra*, at pp. 488-489.)

---

**5** Partisan activity would obviously include one's political affiliation, such as whether one is a Republican or Democrat. The Supreme Court indicated in a footnote that an employer's practice of hiring or firing employees based on their political party affiliation would violate the statutes. (*Gay Law Students*, *supra*, 24 Cal.3d at p. 487, fn. 16.) Of course, an important point of the *Gay Law Students* case was that the statutes are not to be narrowly restricted to such partisan activity.

Following these principles in the present appeal, it would seem that plaintiff's personal political views and advocacy relating to a cause or issue such as same-sex marriage would come within the definition of political activity protected under the statutes. The key question in this case is: was *that* the reason he was fired? Or, on the other hand, was plaintiff fired for removing and disposing of Safeway's poster? If it was the latter, we agree with the trial court that Safeway was within its rights in terminating plaintiff's employment. We briefly elaborate why that is so.

If Termination Was Based on Tearing Down Safeway's Poster

As the trial court correctly pointed out, Safeway had a right of free speech and was clearly entitled to display the subject poster in this case. (See *Lockheed*, *supra*, 28 Cal.2d at p. 486 [nothing in Lab. Code, § 1101 "deprives an employer of the right of free speech and prevents him from publishing his political beliefs or views among his employees"].) Additionally, we agree with the trial court that merely displaying a poster with a political message was not a violation of Labor Code sections 1101 and 1102. The trial court aptly explained: "A poster regarding Gay Rights Month commemorating a gay politician's life for advocating gay rights in no way moves or directs a Safeway employee towards a particular direction as far as political action. We are all confronted with posters advertising particular activities or points of view. Placing a poster is a mere suggestion to consider another point of view regarding political issues that are of public interest." Moreover, the language of Labor Code sections 1101 and 1102 indicates that to constitute a violation, there must be a *coercive* element to the employer's conduct. In section 1101, an employer is prohibited from adopting or enforcing a "rule" or "policy" to "control" or "direct" employees' political activities or affiliations; in section 1102, the coercion or

15.

influence on political activity is exerted through the "threat of discharge." None of these coercive aspects were present here in merely displaying the poster.[6]

Consequently, when plaintiff removed the poster and discarded it into the wash room, he was, in effect, interfering with Safeway's right to free expression. Obviously, the mere fact that he disagreed with Safeway's real or apparent political views did not give him a right to remove Safeway's property or censor its free speech. Additionally, plaintiff's conduct could be construed by Safeway as a form of insubordination—that is, of tampering with or disposing of company property. These are obviously valid grounds on which the employer may take action that are not based on the employee's political activity or affiliation. While terminating a 10-year employee for removing a poster may seem severe, such is an employer's broad prerogative (see Lab. Code, § 2922). The important thing here is that *if that was the reason for plaintiff's termination*, it would not constitute a violation of Labor Code sections 1101 or 1102.[7]

If Termination Was Based on Plaintiff's Subsequent Political Identification

On the other hand, it is possible under the allegations that the poster incident was not the real reason for plaintiff's termination. According to plaintiff's first amended complaint, when plaintiff was confronted about his removal of the poster, he explained to two Safeway managers that he took down the poster because he was "extremely bothered" by the political agenda Safeway was apparently promoting by displaying the poster (e.g., same-sex marriage). Allegedly, when the managers heard plaintiff's explanation, they reacted by expressing "disapproval of [p]laintiff's position." One week

---

[6] To the extent the poster reflected the promotion of an official company policy of diversity or tolerance, we note there is nothing about such a policy that would tend to control or direct any employee's political activities or affiliations.

[7] Our opinion is not based on the particular message involved. Hypothetically, if an employer displayed a poster with a different emphasis—say, promoting the value of traditional marriage between a man and a woman—and an employee who did not like the poster tore it down, our opinion would be the same.

later, plaintiff was fired. Under these allegations, construed liberally, one theory of plaintiff's case was that he was fired because of the political perspective or cause that he identified with and espoused in his discussion with Safeway's managers. *If* plaintiff was fired for his particular political perspective, affiliation or cause of favoring Proposition 8 or being against same-sex marriage, so that it may be inferred that (as plaintiff alleged) Safeway was in effect declaring that the espousal or advocacy of such political views will not be tolerated—then Safeway's action constituted a violation of Labor Code sections 1101 and 1102.[8] (*Gay Law Students*, *supra*, 24 Cal.3d at pp. 487-489; *Ali v. L.A. Focus Publication* (2003) 112 Cal.App.4th 1477, 1487 [wrongful termination in violation of public policy may be based on the employer's violation of Lab. Code, §§ 1101 & 1102].) Therefore, we conclude that plaintiff adequately alleged a cause of action for wrongful termination in violation of Labor Code sections 1101 and 1102.

Factual Showing in Connection with Anti-SLAPP Motion

Of course, in response to an anti-SLAPP motion, a plaintiff must do more than state a valid cause of action. He or she must also substantiate the claim ""'by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' [Citation.]" (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056.) A plaintiff must make a factual showing that his or her case has at least "'minimal merit'" or triability. (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 95, fn. 11; *Grewal v. Jammu*, *supra*, 191 Cal.App.4th at pp. 989-990 [noting that the minimal showing necessary to overcome an anti-SLAPP motion is similar to what is required in the context of a summary judgment motion or nonsuit].)

As alluded to already, plaintiff's declaration averred that when he met with Safeway's managers about the poster incident, he expressed to them his disagreement

---

[8] We are *not* saying an employee is entitled to get away with malicious words or disruptive or offensive conduct in the workplace by calling it political.

with "the political message" of the poster and explained that there were others who stood with him and shared this same political perspective. The fact that plaintiff was abruptly terminated after making such disclosures to Safeway regarding his political beliefs during a time period in this state when issues such as Proposition 8 and same-sex marriage were "hotly contested political issue[s]," combined with other circumstances, permits a reasonable inference that his termination was based on the political views he expressed. Those other circumstances include: plaintiff's employment longevity; his coemployees' observation that he was a thorough and conscientious worker; receiving the ultimate sanction of termination for discarding a company poster without receiving any verbal or written warning, or lesser sanction; Mr. Davis and Mr. Fuentes were suspended rather than terminated after being confronted by Mr. Bullard, who told Mr. Davis he didn't agree with the poster's message either; and, while plaintiff told management he "did not wish to have the poster back in the break room," Mr. Fuentes was only suspended for three days even though he threatened management that "if they were going to put the poster up again, that [he] would do that again to the poster."

This evidence and all reasonable inferences derived therefrom tend to support plaintiff's contention that he was terminated for reasons other than simply taking down and discarding the poster. Such reasons could include punishing him for expressing political views contrary to Safeway's or, by discharging plaintiff, attempting to discourage other employees from expressing political views different from Safeway's in violation of Labor Code sections 1101 and 1102. The plaintiff need only show a minimum level of legal sufficiency and triability to defeat an anti-SLAPP motion. (*Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th 429, 438, fn. 5.) We accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. (*Overstock.com*, *supra*, 151 Cal.App.4th at pp. 699-700.)

Safeway's evidence was inadequate to defeat plaintiff's showing. Safeway presented the declaration of Mr. Nenoff, the Human Resource Director of Safeway's Diversity and Inclusion Department. Mr. Nenoff merely stated it was his understanding that plaintiff was fired because he "took down the Harvey Milk Poster and damaged it." There was no indication in Mr. Nenoff's declaration that he had any personal knowledge of what happened or why.[9] At best, Safeway's evidence does no more than confirm the existence of a factual dispute as to why plaintiff was terminated. On this record, we believe that plaintiff barely made a sufficient factual showing to establish the minimal merit necessary to overcome the anti-SLAPP motion. Therefore, we conclude the trial court erred in granting the motion.

The Trial Court Erroneously Refused to Consider the Employer's Motive

One further comment regarding the trial court's ruling is necessary. The trial court was of the opinion that it was precluded from considering the issue of Safeway's motive in terminating plaintiff's employment. To the contrary, as we have made clear, Safeway's motive or reason for terminating plaintiff's employment is *the* dispositive factual issue in this case. The explanation for the trial court's error is easy to trace. There is a rule to the effect that in deciding the *first prong* of an anti-SLAPP motion (i.e., whether or not the cause of action was based on protected activity), the moving party need not prove the plaintiff's subjective motive or intent to chill the defendant's freedom of speech or petition. (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 271 [so holding]; *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 68 [if moving party shows suit arises out of protected activity, it has no additional burden to prove the plaintiff's subjective intent].) The error made by the trial court was in applying that same rule to the

---

**9** Unfortunately, neither party produced any evidence about the specifics of what was said at the meeting between plaintiff and Safeway's managers.

*second prong* of the analysis, where the viability of plaintiff's cause of action was being considered.

## IV.  The Demurrer

Plaintiff argues the trial court erred in sustaining the demurrer because plaintiff adequately alleged "the requisite elements for a claim of violation of Labor Code §1101, §1102, and wrongful termination in violation of the public policy underlying these statutes."  As explained herein, we agree.  We have held that plaintiff adequately pled a cause of action for violation of Labor Code sections 1101 and 1102, and for wrongful termination in violation of the public policy embodied in those statutes.  On appeal, plaintiff does not argue that the trial court erred in sustaining the demurrer as to any of the other causes of action in his first amended complaint.  Therefore, we do not address the sufficiency of those other causes of action in this appeal, which plaintiff has apparently abandoned.[10]

## DISPOSITION

The trial court's order granting the anti-SLAPP motion is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  Plaintiff is awarded costs on appeal.

_____

Kane, J.

WE CONCUR:

_____

Cornell, Acting P.J.

_____

Peña, J.

---

[10]    It is doubtful we would be required to address the demurrer to the other causes of action in any event, because the trial court sustained the demurrer with leave to amend, which is not an appealable order.

20.